SHANIQUA NEWKIRK,

Case No.:

Plaintiff,

-against-

COMPLAINT

DOUGLAS ELLIMAN, INC., DOUGLAS ELLIMAN REALTY, LLC, DOUGLAS ELLIMAN OF L.I. LLC, DOUGLAS ELLIMAN, LLC, KENNETH I. HABER, ANN CONROY, HAL D. GAVZIE, WENDY E. SANDERS, LAUREN LITT, KARI E. KAPLAN, JASON M. WALKER, JENNIFER L. KALISH, MADELINE S. HULT ELGHANAYAN, ANDREW A. AZOULAY, JAQUELINE TEPLITZKY, DIANE E. JOHNSON, EMILY P. SERTIC, HOLLY P. PARKER, JANNA RASKOPF, ANDREW W. ANDERSON, ANN CUTBILL, ELEONORA SRUGO, JANE POWERS, NEAL J. SROKA, JOSHUA LIEBERMAN, RACHEL MEDALIE, ELENA S. SARKISSIAN, FRANCES W. KATZEN, LAUREN A. MUSS, BRUCE L. EHRMANN, EILEEN HSU, OREN ALEXANDER, TAL ALEXANDER, SARAH BURKE, TAMIR SHEMESH, NOBLE BLACK, SUZAN KREMER, CYBELE KADAGIAN, and ELANA SCHOPPMANN (BRYNES),

Defendants

-----------------------------------------------------------------------X

Plaintiff SHANIQUA NEWKIRK ("Plaintiff" or "Newkirk"), by her attorneys the Law Office of Steven S. Siegel, PLLC and, as and for her Complaint against the above- captioned Defendants (the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      Shaniqua Newkirk is seeking monetary damages and injunctive relief due to Defendants' policies and practices of discriminating against potential tenants based on their source of income.

2.      New York's residents, even those who are employed like Newkirk, suffer from persistent housing insecurity. To address this issue, New York offers subsidized housing vouchers. The Housing Choice Voucher Program, also known as "Section 8," is a federal program administered by local housing authorities, which provides assistance to low-income families to secure safe and sanitary housing in the private rental market.

3.      It is illegal in New York for real estate brokers and landlords to discriminate against prospective tenants based on their source of income, including the use of a housing voucher. Yet, discrimination against voucher-holders, like Newkirk, remains rampant.

4.      Consequently, thousands of New Yorkers with vouchers, Newkirk among them, are forced to remain in overcrowded homeless shelters, substandard housing, and high-poverty neighborhoods, despite that vouchers are meant to provide the financial means and legal right to obtain suitable housing.

5.      The housing vouchers are paid to the landlord directly and provide a guarantee to landlords and real estate agents that voucher holders will be able to pay the rent. Once an applicant receives a voucher, they generally only have 120 days to find an apartment unless they obtain an extension. Many voucher holders, including Newkirk, are met with unlawful source-of-income discrimination and are not able to use the voucher to secure appropriate housing. This discrimination perpetuates residential segregation, causing clusters of Section 8 recipients who are forced to live in less desirable housing or unable to secure housing at all.

6.      Defendants in this action are real estate brokerages and real estate professionals who have a clear policy and practice of refusing to rent apartments to New Yorkers with vouchers. Defendants' voucher ban is in violation of federal, state, and local laws, which prohibit source of

income discrimination. Voucher discrimination has a disparate impact on Black and Hispanic New Yorkers like Newkirk as 82% of voucher holders in New York State are Black or Hispanic.

7.     Defendants' stubborn refusal to accept housing vouchers and Defendants' advertisements and statements made in connection with such refusals, represent unlawful race discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq. and unlawful source of income discrimination and race discrimination under the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-107 et. seq., and the New York State Human Rights Law ("NYSHRL"), New York Consolidated Laws Service, Executive Law § 290 et. seq. Defendants' unlawful policies and practices against renting to voucher holders, clearly demonstrated in their treatment of Newkirk, prevents low-income New Yorkers of color, like Newkirk from using their housing vouchers exacerbating New York's housing crisis.

8.     Defendants market themselves as the purveyors of luxury real estate[1].

9.     The homepage of the Douglas Elliman website displays a gallery of properties for sale with prices ranging from $6million to $85 million atop their slogan: "We are where you want to live." https://www.elliman.com/

10.     The homepage of the New York City section of the Douglas Elliman website offers: "Browse New York City luxury listings currently on the market," and a gallery of properties for sale with prices ranging from $40 million to over $85 million. https://www.elliman.com/newyorkcity/

11.     New York City law requires Defendants to "prominently and conspicuously" display on their website homepage a link to the Fair Housing and Anti-Discrimination Notice. N.Y. Comp. Codes R. & Regs. tit. 19, § 175.29.  Only at the very end of the homepage in tiny font

---

[1] The word "luxury" appears three times in the Google search result for the Douglas Elliman website.

under the heading of State Disclosures is a link to the Fair Housing and Anti-Discrimination Notice.

12.     As demonstrated by their website, Defendants are more concerned with their luxury brand than they are with following the law.

13.     "Clearly the legislature established licensing requirements to assure the public of services competently, skillfully and ethically rendered by real estate brokers…" *M.K.D. Cap. Corp. v. Miller*, 170 Misc. 2d 1002, 1004, 652 N.Y.S.2d 919, 921 (Sup. Ct. 1996). As set forth below, Defendants' violations of the relevant statutes were so numerous and egregious that it calls into question whether they are qualified to be licensed in the State of New York.

14.     Newkirk is a hardworking young woman who has struggled with housing insecurity for the majority of her life.  She has been homeless and forced to sleep in a train station. Newkirk is currently employed, but remains near or below the poverty line. Newkirk sought to use a housing voucher to improve her life circumstances but was met with systemic and indisputable discrimination by the defendants.

15.     Due to Defendants' discriminatory practice Newkirk was unable to use her voucher to rent a new apartment and remains in a dilapidated, rodent and vermin infested apartment, in a crime-ridden neighborhood consisting of a cluster of predominantly Section 8 buildings.

16.     Defendants' discrimination prevented Newkirk from obtaining suitable housing and caused her severe emotional and mental anguish.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the New York City and New York State law claims pursuant to 28 U.S.C. § 1367.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1). All Defendants are residents of the State of New York, and at least one Defendant is a resident of this District of the State of New York.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of this action is situated, in this District.

## PARTIES

20. At all times mentioned herein, Plaintiff Shaniqua Newkirk was and is a resident of the Village of Hempstead, New York State.

21. Shaniqua Newkirk, at all times herein mentioned, held a Housing Choice Voucher Program or "Section 8" voucher.

22. Shaniqua Newkirk is African American. At all times mentioned herein, Shaniqua Newkirk was a member of a protected class as defined federal, by New York State and New York City statutes and regulations.

## THE BROKERAGE DEFENDANTS

23. Defendant Douglas Elliman, Inc. is a publicly traded company headquartered in Miami Florida, with a principal place of business in the county of New York.

24. Douglas Elliman, Inc. is engaged in the real estate and property technology investment business. Douglas Elliman, Inc. owns defendant Douglas Elliman Realty, LLC through Douglas Elliman, Inc**.**'s Delaware subsidiary, Der Holdings LLC. Douglas Elliman, Inc oversees 6,500 real estate agents in New York State and maintains a principal-agency relationship with all 6,500 real estate agents.

25.     Defendant Douglas Elliman Realty, LLC was a privately owned company headquartered in the county of New York. Douglas Elliman Realty, LLC is engaged in the real estate and property technology investment business.

26.     Douglas Elliman, Realty LLC is owned by defendant Douglas Elliman, Inc. Douglas Elliman, LLC oversees 6,500 real estate agents in the state of New York and has a principal-agency relationship with all 6,500 real estate agents. Douglas Elliman Realty LLC has a principal place of business in the county of New York.

27.     Defendant Douglas Elliman of L.I., LLC is a privately owned company headquartered in New York City and is engaged in the real estate and property technology investment business. Douglas Elliman of L.I., LLC is owned by defendant Douglas Elliman, Inc. Douglas Elliman of L.I., LLC oversees 6,500 real estate agents in the State of New York and has a principal-agency relationship with all 6,500 real estate agents. Douglas Elliman of L.I., LLC has a principal-agency relationship with Douglas Elliman, Inc.

28.     Douglas Elliman, LLC is owned by defendant Douglas Elliman, Inc. Douglas Elliman, LLC oversees 6,500 real estate agents in the State of New York and maintains a principal agency relationship with all 6,500 real estate agents. Douglas Elliman, LLC a principal place of business in the county of New York,

29.     Douglas Elliman Realty, LLC has a principal place of business in the county of New York and maintains a principal agency relationship with Douglas Elliman, Inc.

30.     Hereinafter Douglas Elliman, Inc., Douglas Elliman Realty, LLC, Douglas Elliman, LLC and Douglas Elliman of L.I., LLC will be referred to as the **"Entity Defendants"** or **"Douglas Elliman."**

31.     The Entity Defendants have a principal-agent relationship with all of the individual defendants. The Entity Defendants are vicariously liable for the actions of the individual defendants. Each of the individual defendants present themselves as representatives of Douglas Elliman. Each of the individual defendants use the Douglas Elliman logo in their email signature block. Each of the individual defendants has apparent, actual or implied authority to act on behalf of Douglas Elliman.

## BROKER DEFENDANTS

32.     Defendant Kenneth I. Haber was the broker of record for Douglas Elliman Real Estate's operations in Manhattan. As such, Kenneth I. Haber has supervisory responsibility for Douglas Elliman Real Estate's salespersons in Manhattan.

33.     Defendant Ann Conroy was the broker of record for Douglas Elliman Real Estate's operations on Long Island. As such, Ann Conroy has supervisory responsibility for Douglas Elliman Real Estate's salespersons on Long Island.

## MANAGING DIRECTORS

34.     Defendant Hal D. Gavzie is the Executive Vice President of Residential Leasing, and an Associate Broker of the Entity Defendants. His License Number is 10301212839. He is an agent of the Entity Defendants. Hal D. Gavzie maintains his office in New York City.

35.     Defendant Wendy E. Sanders is the Managing Director of Elliman Rentals and a Licensed Real Estate Salesperson of the Entity Defendants. Her License Number is 40SAl171642. Wendy E. Sanders maintains her office in Roslyn, New York.

## BROKER/SALESPERSON DEFENDANTS

36.     Defendant Lauren Litt is a Licensed Real Estate Salesperson and an agent of the Entity Defendants. Her License Number is 10401232432. Defendant Lauren Litt maintains her office on Long Island.

37.     Defendant Kari E. Kaplan is a Licensed Real Estate Salesperson and an agent of the Entity Defendants. Her License Number is 40KA1016806. Kari E. Kaplan maintains her office in New York City.

38.     Defendant Jason M. Walker is an Associate Broker and an agent of Entity Defendants. His License Number is 10301209891. Jason M. Walker maintains his office in New York City.

39.     Defendant Jennifer L. Kalish is a Licensed Real Estate Salesperson and an agent of Entity Defendants. Her License Number is 40KAl153577. Jennifer L. Kalish maintains her office in New York City.

40.     Defendant Madeline S. Hult Elghanayan is an Associate Broker and an agent of Entity Defendants. Her License Number is 10301208221. Madeline S. Hult Elghanayan maintains her office in New York City.

41.     Defendant Andrew A. Azoulay is an Associate Broker and an agent of Entity Defendants. His License Number is 10301220407. Andrew A. Azoulay maintains his office in New York City.

42.     Defendant Jaqueline Teplitzky is an Associate Broker and an agent of Entity Defendants. Her License Number is 30TE0832177. Jaqueline Teplitzky maintains her office in New York City.

43.     Defendant Diane E. Johnson is an Associate Broker and an agent of Entity Defendants. Her License Number is 10301204899. Diane E. Johnson maintains her office in New York City.

44.     Defendant Emily P. Sertic is an Associate Broker and an agent of Entity Defendants. Her License Number is 10301201685. Emily P. Sertic maintains her office in New York City.

45.     Defendant Holly P. Parker is an Associate Broker and an agent of Entity Defendants. Her License Number is 103012200624. Holly P. Parker maintains her office in Katonah, New York, in Westchester County.

46.     Defendant Janna L. Raskopf is a Licensed Real Estate Salesperson and an agent of Entity Defendants. Her License Number is 40LEl109907. Janna L. Raskopf maintains her office in New York City.

47.     Defendant Andrew W. Anderson is an Associate Broker and an agent of Entity Defendants. His License Number is 30AN0965554. Andrew W. Anderson maintains his office in New York City.

48.     Defendant Ann Cutbill Lenane is an Associate Broker and an agent of Entity Defendants. Ann Cutbill Lenane maintains her office in New York City.

49.     Defendant Eleonora Srugo is a Licensed Real Estate Salesperson and an agent of Entity Defendants. Her License Number is 10401216596. Eleonora Srugo maintains her office in New York City.

50.     Defendant Jane Powers is a Licensed Real Estate Broker and an agent of Entity Defendants. Her License Number is 10301207790. Jane Powers maintains her office in New York City.

51. Neal J. Sroka is a Licensed Real Estate Broker and an agent of Entity Defendants. His License Number is 10301208287. Neal J. Sroka maintains his office in New York City.

52. Defendant Joshua Lieberman is a Licensed Real Estate Salesperson and an agent of Entity Defendants. His License Number is 10301214798. Joshua Lieberman maintains his office in New York City.

53. Defendant Rachel Medalie is a Licensed Real Estate Broker and an agent of Douglas Elliman Realty. Her License Number is 10301205240. Rachel Medalie maintains her office in New York City.

54. Defendant Elena S. Sarkissian is a Licensed Real Estate Broker and an agent of Entity Defendants. Her License Number is 30SA1019618. Elena S. Sarkissian maintains her office in New York City.

55. Defendant Frances W. Katzen is a Licensed Real Estate Broker and an agent of Entity Defendants. Her License Number is 30KA1018951. Frances W. Katzen maintains her office in New York City.

56. Defendant Lauren A. Muss is a Licensed Real Estate Broker and an agent of Entity Defendants. Her License Number is 30MU0807706. Lauren A. Muss maintains her office in New York City.

57. Defendant Bruce L. Ehrmann is a Licensed Real Estate Broker and an agent of Entity Defendants. His License Number is 30EH0802696. Bruce L. Ehrmann maintains his office in New York City.

58. Defendant Eileen Hsu is a Licensed Real Estate Salesperson and an agent of Entity Defendants. Her License Number is 40HS1067929. Eileen Hsu maintains her office in New York City.

59.     Defendant Oren Alexander is a Licensed Real Estate Broker and an agent of Entity Defendants. His License Number is 10301206719. Oren Alexander maintains his office in New York City.

60.     Defendant Tal Alexander is a Licensed Real Estate Salesperson and an agent of Entity Defendants. His License Number is 10401212622. Tal Alexander maintains his office in New York City.

61.     Defendant Sarah Burke is an  Associate Broker and an agent of Entity Defendants. Her License Number is 10301209275. Sarah Burke maintains her office in New York City.

62.     Defendant Tamir Shemesh is an Associate Broker and an agent of Entity Defendants. His License Number is 30SH0853809. Tamir Shemesh maintains his office in New York City.

63.     Defendant Noble Black is an Associate Broker and an agent of Entity Defendants. His License Number is 10301211307. Noble Black maintains his office in New York City.

64.     Defendant Suzan Kremer is an Associate Broker and an agent of Entity Defendants. Her License Number is 10301207968. Suzan Kremer maintains her office in New York City.

65.     Defendant Cybele Kadagian is a Licensed Real Estate Salesperson and an agent of Entity Defendants. Her License Number is 40KA1163542. Cybele Kadagian maintains her office in New York City.

66.     Defendant Elana Schoppmann (Brynes) is a Licensed Real Estate Salesperson and an agent of Entity Defendants. Her License Number is 10401294328. Elana Schoppmann maintains her office in New York City.

# FACTUAL ALLEGATIONS

## Defendants' Rental Operations

67.     Defendants are residential real estate brokerages, brokers, and licensed real estate salespersons.

68.     Defendants offer for rent either directly or indirectly properties in and around the New York City area, which did not exceed the Housing Choice Voucher Program's maximum allowable rents (the "Subject Properties").

69.     As real estate brokers, agents, and salespersons, Defendants are required to comply with anti-discrimination laws under the FHA, the NYSHRL, the NYCHRL, and the New York Real Property Law ("NYRPL").

70.     The FHA prohibits discrimination in housing because of race or national origin, including policies that result in a disparate effect based on disability, race or national origin. 42 U.S.C. § 3604(f), 42 U.S.C. § 3604(a), 24 C.F.R. § 100.500.

71.     The NYCHRL and the NYSHRL require that all residential rental properties be made available to prospective tenants with any lawful source of income, and specifically provide that housing vouchers are a lawful source of income. It is illegal under the NYCHRL and the NYSHRL for Defendants to discriminate based on source of income and particularly where that source of income is a housing voucher. New York City, N.Y., Code § 8-102, 8-107, N.Y. Exec. Law § 292, 296.

72.     Defendants, their employees and/or their agents stated to Newkirk that Defendants and/or the owners they represent would not accept Housing Choice Vouchers as a source of payment for rent at the Subject Properties. Defendants' acts, policies, and practices constitute

impermissible discrimination because of race on the basis of disparate impact, as well as source of income discrimination.

## Discrimination Experienced by Plaintiff Shaniqua Newkirk

73.     Shaniqua Newkirk has struggled with housing insecurity for most of her life.

74.     Newkirk lived with her mother until 2014 when she became homeless.  Newkirk was forced to live in a train station at night and walk the streets during the day for approximately two years.

75.     Newkirk has worked since she was a teenager. She worked for a local Jim Dandy dry cleaner. She also worked at Wal-Mart in Levittown, Long Island.

76.     Newkirk currently works at a non-profit on Long Island, where she makes slightly more than the minimum wage, but her hours are capped at 32 hours per week.

77.     At all times relevant herein Newkirk held a Section 8 Housing Choice voucher.

78.     The voucher offered a potentially life-changing opportunity for Newkirk.

79.     In the spring of 2021 Newkirk tried repeatedly and unsuccessfully to find real estate professionals to help with her search for a new residence.

80.     In or about June of 2021, Newkirk found a list on the internet of the most successful agents and brokers from one of the most dominant and successful real estate brokerages in New York, Douglas Elliman Real Estate.

81.     Since she had been unsuccessful in contacting individual agents and brokers, Newkirk decided to contact the realtors on the list.

82.     Newkirk emailed the associate brokers and licensed real estate salespersons on the list explaining that she was a voucher holder and asking if they had any apartments to show her.

83. The top Douglas Elliman Real Estate professionals in New York offered Newkirk replies such as:

- "I don't have any landlords or owners that are accepting Section 8."

- "I only specialize in luxury real estate transactions and don't even know what 'Section 8 means.'"

- "I don't have access to those."

- "I really don't know what sec 8 voucher is?"

- "I never deal with it."

84. Thirteen of Douglas Elliman's top brokers and agents failed to respond to Newkirk at all, even after Newkirk tried to contact them multiple times.

85. Newkirk was unable to secure alternative housing prior to the expiration of her voucher.

86. Newkirk was forced to remain in a decrepit rodent and vermin infested apartment.

87. Newkirk's current residence is in a crime-ridden neighborhood consisting of a cluster of predominantly Section 8 buildings.

88. At one point, after the events described in this complaint, the moldy ceiling in Newkirk's living room collapsed exposing her to dangerous chemicals.

89. After the events described in the complaint Newkirk's car was broken into and her tires were slashed.

90. Newkirk is attempting to obtain a new voucher, but has lost hope of obtaining the help of realtors.

91. Newkirk suffers from depression, mental anguish, and has persistent anxiety about her safety and her future because of her lack of housing opportunities and her rejection by the Defendants.

## Allegations Related to Claims Against Defendant Broker Kenneth I. Haber

92.     Defendant Kenneth I. Haber was at all relevant times Douglas Elliman Real Estate's broker of record for its operations in Manhattan.

93.     As such, under New York State Real Property Law §441, Kenneth I. Haber was responsible for the supervision of associate brokers and salespersons in Manhattan, including all of the individual defendants named herein[2] ("Manhattan Salespersons").

94.     N.Y. Real Prop. Law § 441 provides in pertinent part:

(d) The one hundred fifty-two hours of an approved real estate course or courses required by paragraph (b) of this subdivision shall include instruction on fair housing and discrimination in the sale or rental of real property or an interest in real property… instruction on the licensed real estate broker's responsibility for ensuring that each licensed real estate salesman under such broker's supervision is in compliance with his or her obligations under applicable federal, state, and local laws, rules, and regulations pertaining to fair housing and discrimination in the sale or rental of real property or an interest in real property.

95.     Under 19 New York State Rules and Regulations §175.21, such supervision must "consist of regular, frequent and consistent personal guidance, instruction, oversight and superintendence by the real estate broker with respect to the general real estate brokerage business conducted by the broker, and all matters relating thereto."

96.     Kenneth I. Haber failed to adequately supervise the Manhattan Salespersons in their communications with Shaniqua Newkirk in violation of N.Y. Real Prop. Law § 441 and 19 NYRR §175.21.

97.     N.Y. Real Prop. Law § 442-c provides that a real estate broker is responsible for wrongful acts by a real estate salesperson or employee of the broker, including violations of the NYSHRL, if the broker had actual knowledge of such violation or retains the benefits of a transaction wrongfully negotiated.

---

[2] with the exception of Defendants Wendy E. Sanders and Lauren Litt who operate out of Long Island.

98.     Upon information and belief Kenneth Haber had actual knowledge of the Manhattan Salespersons' violations of the NYSHRL including in their communications with Newkirk as they were his top agents and is therefore responsible for their violations of the NYSHRL.

### Allegations Related to Claims Against Defendant Broker Ann Conroy

99.     Defendant Ann Conroy was at all relevant times Douglas Elliman Real Estate's broker of record for its operations on Long Island.

100.    As such, under New York State Real Property Law §441, Ann Conroy was responsible for the supervision of associate brokers and salespersons on Long Island, including defendants Wendy E. Sanders and Lauren Litt (collectively the "Long Island Salespersons.")

101.    Under 19 New York State Rules and Regulations §175.21, such supervision must "consist of regular, frequent and consistent personal guidance, instruction, oversight and superintendence by the real estate broker with respect to the general real estate brokerage business conducted by the broker, and all matters relating thereto."

102.    Ann Conroy failed to adequately supervise Wendy E. Sanders and Lauren Litt in their communications with Shaniqua Newkirk in violation of N.Y. Real Prop. Law § 441 and 19 NYRR §175.21.

103.    N.Y. Real Prop. Law § 442-c provides that a real estate broker is responsible for wrongful acts by a real estate salesperson or employee of the broker, including violations of the NYSHRL, if the broker had actual knowledge of such violation or retains the benefits of a transaction wrongfully negotiated.

104.    Upon information and belief Ann Conroy had actual knowledge of Wendy E. Sanders and Lauren Litt's violations of the NYSHRL including in their communications with

Newkirk as they were her top agents and is therefore responsible for their violations of the NYSHRL.

**Allegations Related To Claims Against Defendant Wendy E. Sanders**

105.    On or about February 11, 2021, Shaniqua Newkirk emailed Wendy Sanders and Lauren Litt, Douglas Elliman Real Estate Salespersons.

106.    Wendy Sanders and Lauren Litt replied via text: "Hi there. You had emailed us regarding a studio apartment on Knightsbridge Road. Kindly tell us when you're looking to move, budget and if you have any pets. Thanks."

107.    Shaniqua Newkirk responded: "Hey yes I did. I'm looking to move immediately. My budget is $1,705. And no I don't have any pets."

108.    Wendy Sanders responded: "Wonderful. So this is a studio. Priced at $1700. including heat and water and a parking spot 2nd floor Non elevator."

109.    Newkirk responded: "Yes that's sounds great"

110.    Wendy Sanders responded: "Okay, great."

111.    Shaniqua Newkirk replied: "Does this place accept section 8?"

112.    Neither Wendy Sanders nor Lauren Litt responded.

113.    On February 12, 2021, Shaniqua Newkirk texted Ms. Sanders and Ms. Litt again asking: "Hi good afternoon, does the apartment accept section 8?

114.    Neither Wendy Sanders nor Lauren Litt replied. Copies of Newkirk's texts with Wendy Sanders and Lauren Litt are annexed hereto as **Exhibit A.**

**Allegations Related To Claims Against Defendant Kari E. Kaplan**

115.    In February of 2021, Shaniqua Newkirk saw an advertisement for an apartment at 153 East 57th Street in Manhattan on streeteasy.com.

116.    The advertised rent on the property was $2,150 per month.

117.    The advertisement stated *inter alia*: "Must earn 40X monthly cost, reflected on 2020 tax returns (90K), full time employment." A copy of the advertisement is annexed hereto as **Exhibit B.**

118.    On February 21, 2021, Shaniqua Newkirk emailed Kari Kaplan, a Douglas Elliman Real Estate Salesperson as follows: "Hi, I am very interested in 153 E. 57th 16-G. I would like to schedule an appointment to come see it. Please let me know if there is an application. What are the requirements? Do they take sec 8? Thank you."

119.    Kari Kaplan responded, "This is a coop which means there is an approval process you must earn 87k GROSS income shown on your W2 and tax returns for 2years either 2019 & 2018 or 2019 & 2020. You must be employed full time The application fees r [sic] paid by owner but y [sic] will need to supply documents like 2 yrs tax returns letter of employment and bank statements If u can provide proof of these figure lmk [sic] and we can schedule appt Kari Kaplan." Copies of Newkirk's emails with Kari Kaplan are annexed hereto as **Exhibit C.**

120.    Defendant Kari Kaplan did not even ask Shaniqua Newkirk what amount her voucher was for, indicating that her concern was simply with Newkirk's use of a Housing Choice voucher, not whether the rent would be covered.

**Allegations Related To Claims Against Defendant Jason Walker**

121.    On June 14, 2021, Shaniqua Newkirk  emailed Jason Walker, an Associate Broker with Douglas Elliman Real Estate as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

122.    Jason Walker failed to respond.

123. On June 15, 2021, Shaniqua Newkirk emailed Jason Walker again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

124. After Newkirk's second email, Jason Walker replied: "Unfortunately no. Best of luck."

125. Jason Walker, according to his signature block, is "Top 1% as ranked by The Wall Street Journal" and has "Successfully sold over $1 Billion in Real Estate"

126. Copies of Newkirk's emails with Jason Walker are annexed hereto as **Exhibit D.**

### Allegations Related To Claims Against Jennifer Kalish

127. On June 14, 2021, Shaniqua Newkirk emailed Jennifer Kalish, a Douglas Elliman Real Estate Salesperson as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

128. Jennifer Kalish responded, "Hi, at this moment I don't have any landlords or owners that are accepting section 8. But I will keep you in mind if anything comes to mind. Best, Jen."

129. Jennifer Kalish's signature block states that she is "**#1 Agent, Manhattan**" and "**#5 Agent, Nationwide**."

130. Copies of Newkirk's emails with Jennifer Kalish are annexed hereto as **Exhibit E.**

### Allegations Related To Claims Against Defendant Madeline Hult Elghanayan

131. On June 14, 2021, Shaniqua Newkirk emailed Madeline Hult Elghanayan, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

132.    Madeline Hult Elghanayan responded, "Hi Shay, Thank you for reaching out. I am sorry that I can't be of help — I only specialize in luxury real estate transactions and don't even know what sec 8 means. We have scaled down our business due to covid. Best of luck!  Madeline."

133.    Madeline Hult Elghanayan's signature block states that she was: "***RANKED #1 AGENT at Douglas Elliman 2018***, RANKED #2 Agent at Douglas Elliman 2014, RANKED #8 Agent at Douglas Elliman 2017."

134.    Copies of Newkirk's emails with Madeline Hult Elghanayan's are annexed hereto as **Exhibit F.**

### Allegations Related To Claims Against Defendant Andrew Azoulay

135.    On June 14, 2021, Shaniqua Newkirk emailed Andrew Azoulay, a Douglas Elliman Real Estate Salesperson as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

136.    Andrew Azoulay responded, "Hi Shay, Sorry I do not."

137.    Andrew Azoulay's signature block states that he is "Top 1% of Agent's [sic] Company Wide."

138.    Copies of Newkirk's emails with Andrew Azoulay are annexed hereto as **Exhibit G.**

### Allegations Related To Claims Against Defendant Jaqueline (Jacky) Teplitzky

139.    On June 14, 2021, Shaniqua Newkirk emailed Jaqueline Teplitzky, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

140.    Jacquelin Teplitzky failed to respond.

141. On June 15, 2021, Shaniqua Newkirk emailed Jaqueline Teplitzky again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

142. Jaqueline Teplitzky responded, "No sorry we don't."

143. Copies of Newkirk's emails with Jaqueline Teplitzky are annexed hereto as **Exhibit H.**

### Allegations Related To Claims Against Defendant Diane Johnson

144. On June 14, 2021, Shaniqua Newkirk emailed Diane Johnson, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

145. Diane Johnson failed to respond.

146. On June 15, 2021, Newkirk emailed Diane Johnson again stating: "Hi, I am still looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

147. Diane Johnson responded, "I really don't know what sec 8 voucher is?"

148. Diane Johnson's signature block states that she is "#4 Agent GCI '19," "#5 Agent Transactions '19," and "Pinnacle Award."

149. Copies of Newkirk's emails with Diane Johnson are annexed hereto as **Exhibit I.**

### Allegations Related To Claims Against Defendant Emily P. Sertic

150. On June 14, 2021, Shaniqua Newkirk emailed Emily Sertic, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

151. Emily Sertic failed to respond.

152.    On June 15, 2021, Newkirk emailed Emily Sertic again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

153.    Emily Sertic responded, "I'm sorry I don't."

154.    Emily Sertic's signature block state that states that she was "#1 New Development Agent 2019," "#3 Individual Agent in 2019," and received the "2018 Pinnacle Award."

155.    Copies of Newkirk's emails with Emily Sertic are annexed hereto as **Exhibit J.**

### Allegations Related To Claims Against Defendant Holly P. Parker

156.    On June 14, 2021, Shaniqua Newkirk emailed Holly Parker, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

157.    Holly Parker responded, "I'm sorry but I don't have access to those."

158.    Holly Parker's signature block states "#1 Team at Douglas Elliman 2020."

159.    Copies of Newkirk's emails with Holly Parker are annexed hereto as **Exhibit K.**

### Allegations Related To Claims Against Defendant Janna L. Raskopf

160.    On June 14, 2021, Shaniqua Newkirk emailed Janna Raskopf, a Douglas Elliman Real Estate Salesperson as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

161.    Janna Raskopf responded, "What are you looking for? Move in date? Budget? Size of apt? Length of lease? Neighborhood?"

162.    Janna Raskopf's signature block states that she was "19 Agent GCI New York City, and #1 Agent Rental Manhattan 2020, 2019, 2018, 2020 Diamond Award Winner, 2019, 2018, 2017 Platinum Award Winner."

163.     Shaniqua Newkirk responded, "My voucher is for $1,705. I need a one bedroom, a 1-year lease, i am open to areas. Thank you."

164.     Janna Raskopf responded, "Sorry, at the moment I don't have anything that meets that criteria but if I do, I will let you know."

165.     Janna Raskopf never contacted Newkirk again.

166.     Copies of Newkirk's emails with Janna Raskopf are annexed hereto as **Exhibit L.**

**Allegations Related To Claims Against Defendant Andrew Anderson**

167.     On June 14, 2021, Shaniqua Newkirk emailed Andrew Anderson, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?

168.     Andrew Anderson failed to respond.

169.     On June 15, 2021, Newkirk emailed Andrew Anderson again: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?

170.     Andrew Anderson responded, "Hi Shaniqua, All landlords accept Section 8 vouchers. What neighborhoods and price points are you looking at?"

171.     Andrew Anderson's signature block states "The Anderson-Ehrmann Team, #5 Team in New York City."

172.     Shaniqua Newkirk responded, "I am open to neighborhoods, my voucher is for $1,705, I need a 1 bedroom. Thank you."

173.     Andrew Anderson responded, "Hi, Unfortunately, none of my listings are in that price point.  Thanks."

174. Shaniqua Newkirk responded, "So there is nothing you can show me?"

175. Andrew Anderson responded, "Hi, I don't have any listings in that price point to show. In the event that I get something that would work I will send it over. Thanks."

176. Andrew Anderson never contacted Newkirk again.

177. Copies of Newkirk's emails with Andrew Anderson are annexed hereto as **Exhibit M.**

**Allegations Related To Claims Against Defendants Ann Cutbill Lenane**

178. On June 14, Shaniqua Newkirk emailed Ann Cutbill Lenane, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

179. Ann Cutbill Lenane responded, "Hi - I wish that I could help you but I know that Section 8 housing right now it's so hard to find and I never deal with it at all but good luck with your search"

180. Ann Cutbill Lenane's signature block states "Annie Gets It Done!" and "#1 Manhattan Agent (Transactions)" and "#2 Manhattan Agent (GCI)."

181. Copies of Newkirk's emails with Ann Cutbill are annexed hereto as **Exhibit N.**

**Allegations Related To Claims Against Noble Black**

182. On June 14, 2021, Shaniqua Newkirk emailed Noble Black, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

183. Noble Black responded, "Hi Shaniqua- Are you looking to purchase an apartment or one? What is your budget and size requirements etc? Location preference, etc?"

184.    Noble Black's signature block states "#1 New Development Team" and "#3 Team in Overall Sales, 2019" and "#1 Team in Overall Sales, 2018."

185.    Shaniqua Newkirk responded, "I am looking to rent. My voucher covers $1,705".

186.    Noble Black responded, "Hi Shaniqua- I work mostly in sales and unfortunately my rental listings are all above that price range. If anything comes in that matches that I will let you know. Best of luck with your search."

187.    Nobel Black never contacted Newkirk again.

188.    Copies of Newkirk's emails with Noble Black are annexed hereto as **Exhibit O**.

<u>**Allegations Related To Claims Against Suzan Kremer**</u>

189.    On June 14, 2021, Shaniqua Newkirk emailed Suzan Kremer, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

190.    Suzan Kremer responded, "Thank you for reaching out Shay. I am not familiar with Section 8 properties and I do not have any rental listings. I will ask one of my colleagues if they can assist you. What area are you looking to be in? What's your Budget? How many bedrooms? Whats [sic] your time frame? Do you have a pet? Do you need a doorman building? Let me know"

191.    Suzan Kremer's signature block states: "WHO YOU WORK WITH MATTERS," "Ranked #14 Top Individual Elliman Broker," "Specializing in Sales & Rentals, Chairman's Diamond Circle, Ranked #5 Top Broker (GCI), REBNY Deal of the Year Recipient."

192.    Shaniqua Newkirk responded, "My voucher is for $1,705. 1 bedroom, no pets, no doorman needed, I am ready to move. Thank you".

193.    On June 15, 2021, Newkirk emailed Suzan Kremer again asking: "Were you able to find anything?"

194.     Suzan Kremer responded "No I wasn't. There was not [sic] response but will reach out again tomorrow."

195.     Suzan Kremer never emailed Newkirk again.

196.     Copies of Newkirk's emails with Susan Kremer are annexed hereto as **Exhibit P.**

<u>**Allegations Related To Claims Against Gisela Vergara**</u>

197.     On June 14, 2021, Shaniqua Newkirk emailed Gisela Vergara, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

198.     Gisela Vergara failed to respond.

199.     On June 15, 2021, Shaniqua Newkirk emailed Gisela Vergara again stating: "Hi, I am still looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

200.     Gisela Vergara responded, "Hi What size and price range?"

201.     Gisela Vergara's signature block states: "2020 Top 20 Broker companywide & 2021 Diamond Award & 2018 Platinum Award, Top 4% of Agents Company wide," "2017 & 2015 Pinnacle Club Member – Douglas Elliman's Highest Ranking Awards Distinction."

202.     Shaniqua Newkirk responded, "I need a 1 bedroom, and my voucher covers $1,705. Thank you".

203.     On June 16, 2021, Gisela Vergara emailed Newkirk: "Sounds good. What neighborhoods are you interested in?"

204.     Newkirk responded: "I am not sure of area. Whatever you can suggest should be fine."

205. On June 17, 2021, Gisela Vergara wrote to Newkirk and cc'd Hal D. Gavzie, Douglas Elliman's Executive Vice President of Residential Leasing: "Hi Shaniqua I'm not well versed on this price point, but I will have my manager Hal, who is copied on this email, [sic] connect you with an agent who can help you."

206. Neither Mr. Gavzie nor Gisela Vergara emailed Newkirk again.

207. Copies of Newkirk's emails with Gisela Vergara are annexed hereto as **Exhibit Q.**

## Allegations Related To Claims Against Tamir Shemesh

208. On June 14, 2021, Shaniqua Newkirk emailed Tamir Shemesh, a Douglas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

209. Tamir Shemesh responded: "Hi, of course we are willing to help. How many bedrooms are you looking for and how much are you looking to spend?"

210. Tamir Shemesh's signature block states: "Ranked #2 Team in New York Sales Volume & Ranked #18 Nationwide by the Wall Street Journal."

211. Newkirk responded: "Hi, I am looking for a 1 bedroom, my voucher is $1,705."

212. Tamir Shemesh failed to respond.

213. On June 15, 2021, Newkirk emailed Shemesh again asking: "Were you able to find anything?"

214. Tamir Shemesh never responded to Newkirk. Copies of Newkirk's emails with Tamir Shemesh are annexed hereto as **Exhibit R.**

## Allegations Related To Claims Against Cybele Kadagian

215.    On June 14, 2021, Shaniqua Newkirk emailed Cybele Kadagian, a Douglas Elliman Real Estate Salesperson as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

216.    Cybele Kadagian responded "HI [sic] Yes, landlords do accept section 8 I do not currently have any of these apts [sic] What are you willing to spend and what area? Thank you"

217.    Cybele Kadagian signature block states: "RECIPEIENT OF 2020 DIAMOND AWARD" "Top 3% Agents Nationwide," "America's Best 2021 Real Trends". Copies of Newkirk's emails with Cybele Kadagian are annexed hereto as **Exhibit S.**

## Allegations Related To Claims Against Elana Schoppmann (Byrnes)

218.    On June 14, 2021, Shaniqua Newkirk emailed Elana Schoppmann (Byrnes), a Douglas Elliman Real Estate Salesperson as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

219.    Elana Schoppmann (Byrnes), failed to respond.

220.    On June 15, 2021, Shaniqua Newkirk emailed Elana Schoppmann (Byrnes), again stating: "Hi, I am still looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

221.    Elana Schoppmann (Byrnes), responded, "Apologies for the delay. What are you looking for in terms of neighborhood, bedroom count, etc."

222.    Shaniqua Newkirk responded, "I am open to neighborhood, I need a 1 bedroom, and my voucher covers $1,705. Thank you".

223.    Elana Schoppmann (Byrnes) never responded.

224. Copies of Newkirk's emails with Elana Schoppmann (Byrnes), responded are annexed hereto as **Exhibit T.**

## Allegations Related To Claims Against Defendant Sarah Burke

225. On June 14, 2021, Newkirk emailed Sarah Burke a Doulas Elliman Real Estate Associate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

226. Sarah Burke failed to respond.

227. On June 15, 2021, Shaniqua Newkirk emailed Sarah Burke again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

228. Sarah Burke never responded to either of Newkirk's emails. Copies of Newkirk's emails are annexed hereto as **Exhibit U.**

## Allegations Related To Claims Against Defendant Eleonora Srugo

229. On June 14, 2021, Shaniqua Newkirk emailed Eleonora Srugo, a Douglas Elliman Real Estate Salesperson as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

230. Eleonora Srugo never responded to Newkirk's email.

231. On June 15, 2021, Newkirk emailed Elanora Srugo again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

232. Eleonora Srugo never responded to either of Newkirk's emails.

233. Copies of Newkirk's emails are annexed hereto as **Exhibit V.**

**Allegations Related To Claims Against Defendant Jane Powers**

234. On June 14, 2021, Newkirk emailed Jane Powers a Doulas Elliman Real Estate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

235. Jane Powers failed to respond.

236. On June 15, 2021, Shaniqua Newkirk emailed Jane Powers again: "Hi, I am still looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

237. Jane Powers never responded to either of Newkirk's emails.

238. Copies of Newkirk's emails are annexed hereto as **Exhibit W**.

**Allegations Related To Claims Against Neal J. Sroka**

239. On June 14, 2021, Shaniqua Newkirk emailed Neal J. Sroka, a Douglas Elliman Real Estate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

240. Neal J. Sroka failed to respond.

241. On June 15, 2021, Newkirk emailed Neal J. Sroka again stating: "Hi, I am still looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

242. Neal J. Sroka never responded to either of Newkirk's emails.

243. Copies of Newkirk's emails are annexed hereto as **Exhibit X.**

**Allegations Related To Claims Against Joshua Lieberman**

244. On June 14, 2021, Shaniqua Newkirk emailed Joshua Lieberman, a Douglas Elliman Real Estate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

245. Joshua Lieberman failed to respond.

246. On June 15, 2021, Newkirk emailed Joshua Lieberman again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

247. Joshua Lieberman never responded to either of Newkirk's emails.

248. Copies of Newkirk's emails are annexed hereto as **Exhibit Y**.

**Allegations Related To Claims Against Rachel Medalie**

249. On June 14, 2021, Shaniqua Newkirk emailed Rachel Medalie, a Douglas Elliman Real Estate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

250. Rachel Medalie failed to respond.

251. On June 15, 2021, Newkirk emailed Rachel Medalie again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

252. Rachel Medalie never responded to either of Newkirk's emails.

253. Copies of Newkirk's emails are annexed hereto as **Exhibit Z.**

**<u>Allegations Related To Claims Against Elena S. Sarkissian</u>**

254.    On June 14, 2021, Shaniqua Newkirk emailed Elena S. Sarkissian, a Douglas Elliman Real Estate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

255.    Elena S. Sarkissian failed to respond.

256.    On June 15, 2021, Newkirk emailed Elena S. Sarkissian again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

257.    Elena S. Sarkissian never responded to either of Newkirk's emails.

258.    Copies of Newkirk's emails are annexed hereto as **Exhibit AA.**

**<u>Allegations Related To Claims Against Frances W. Katzen</u>**

259.    On June 14, 2021, Shaniqua Newkirk emailed Frances W. Katzen, a Douglas Elliman Real Estate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

260.    Frances W. Katzen failed to respond.

261.    On June 15, 2021, Newkirk emailed Frances W. Katzen again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

262.    Frances W. Katzen never responded to either of Newkirk's emails.

263.    Copies of Newkirk's emails are annexed hereto as **Exhibit BB**.

## **Allegations Related To Claims Against Lauren A. Muss**

264.    On June 14, 2021, Shaniqua Newkirk emailed Lauren A. Muss, a Douglas Elliman Real Estate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

265.    Lauren A. Muss failed to respond.

266.    On June 15, 2021, Newkirk emailed Lauren A. Muss again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

267.    Lauren A. Muss never responded to either of Newkirk's emails. Copies of Newkirk's emails are annexed hereto as **Exhibit CC**.

## **Allegations Related To Claims Against Bruce L. Ehrmann**

268.    On June 14, 2021, Shaniqua Newkirk emailed Bruce L. Ehrmann, a Douglas Elliman Real Estate Broker as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

269.    Bruce L. Ehrmann failed to respond.

270.    On June 15, 2021, Newkirk emailed Bruce L. Ehrmann again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

271.    Bruce L. Ehrmann never responded to either of Newkirk's emails.

272.    Copies of Newkirk's emails are annexed hereto as **Exhibit DD**.

## Allegations Related To Claims Against Eileen Hsu

273.     On June 14, 2021, Shaniqua Newkirk emailed Eileen Hsu, a Douglas Elliman Real Estate Salesperson as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

274.     Eileen Hsu failed to respond.

275.     On June 15, 2021, Newkirk emailed Eileen Hsu again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

276.     Eileen Hsu never responded to either of Newkirk's emails.

277.     Copies of Newkirk's emails are annexed hereto as **Exhibit EE.**

## Allegations Related To Claims Against Oren Alexander And Tal Alexander

278.     On June 14, 2021, Shaniqua Newkirk emailed Oren Alexander, a Douglas Elliman Real Estate Broker, and Tal Alexander, a Douglas Elliman Real Estate Salesperson as follows: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

279.     Oren and Tal Alexander failed to respond.

280.     On June 15, 2021, Newkirk emailed Oren and Tal Alexander again stating: "Hi, I am looking for an apartment. I have a sec 8 voucher and need some help. Do you have any apartments that take sec 8 that you could show me?"

281.     Oren and Tal Alexander never responded to either of Newkirk's emails.

282.     Copies of Newkirk's emails are annexed hereto as **Exhibit FF.**

## Discriminatory Advertising

283.    The first contact a voucher holder will typically have with Defendant Douglas Elliman Real Estate is through its advertising of apartments, usually on Elliman.com, streeteasy.com, Compass.com, Zillow.com, Realty.com, and Onekeymls.com, among others.

284.    Defendant Douglas Elliman Real Estate, as the listing broker, was and is required to review and approve any and all advertisements.

285.    Some Douglas Elliman Real Estate advertisements state that successful applicants must have "excellent credit," or the equivalent, or specify a high minimum credit score such as 630 or 700, or daunting income requirements, such as an annual income of forty times the monthly rent.

286.    For example, the advertisement on streeteasy.com for the apartment that Newkirk inquired about at 153 E 57th Street stated: "Must earn 40X monthly cost, reflected on 2020 tax returns (90K), full time employment."

287.    These requirements are used as a pretext to discourage voucher holders, since voucher holders, by use of their voucher, can guarantee rent payments, but voucher holders cannot meet these criteria.

## Allegations Relevant to All Defendants

288.    As alleged herein, Defendants' refusals to assist Newkirk due to her use of a voucher were pervasive and egregious. Defendants' responses to Newkirk ranged from ignoring Newkirk entirely to blatantly refusing to assist her because of her use of a voucher.

289.    Defendant Douglas Elliman Real Estate's salespersons and brokers, who learn that an applicant is a housing voucher holder, like Newkirk was, routinely terminate the application

process by cutting off communication with the applicant, stating that the landlord does not accept vouchers, or offering some other excuse for their failure to assist the applicant.

290.    The agents Newkirk contacted are some of the most successful agents in New York City and across the country as Defendants describe themselves in their emails signature blocks.

291.    Upon information and belief and based on the responses or lack thereof Defendants and their representatives made to Newkirk's emails and inquiries described above, Defendants have policies or practices of refusing to accept housing vouchers.

292.    Upon information and belief and based on the responses or lack thereof Defendants and their representatives made to Newkirk's emails and inquiries described above, Defendants have policies or practices of refusing to accept housing vouchers, at the Subject Properties, which Defendants are the brokers for, own, or manage.

293.    By their acts, policies, and practices, Defendants refuse to rent to individuals who intend to use vouchers at their rental properties. In doing so, Defendants unlawfully discriminate against renters in New York City based on their source of income.

294.    Since vouchers are allocated disproportionately to Black and Hispanic individuals, Defendants' form of source-of-income discrimination disproportionately and adversely impacts prospective Black and Hispanic tenants.

295.    Upon information and belief, Defendants and/or their owners, subsidiaries, and affiliates created, participated in, supervised, controlled, and/or approved the discriminatory policy or practice the representative or representatives expressed in the emails to Newkirk described above.  Accordingly, each of the Defendants is liable for the unlawful conduct described herein.

296.    Defendants' unlawful acts as described above were, and are, intentional and willful, and have been, and are, implemented with reckless and wanton disregard for the statutorily

protected rights of renters like Newkirk who intend to use a voucher as a source of income to help pay for rent.

297.     Voucher holders are disproportionately Black and Hispanic New Yorkers and therefore the type of source-of-income discrimination described herein disproportionately and negatively affects prospective Black or Hispanic tenants like Newkirk.

298.     The disparate impact of Defendants' policies on Black and Hispanic New Yorkers is remarkable. 82% of voucher-holders are Black or Hispanic.  Defendant's ban on voucher holders is 3.2 times more likely to adversely affect Black or Hispanic New Yorkers.

299.     Black and Hispanic New Yorkers, like Newkirk, sustain a severely disproportionate share of the burden of Defendants' policies.

300.     Voucher bans like those perpetuated by Defendants make it extremely difficult for individuals with vouchers to obtain adequate housing. According to HUD, "[i]t takes a lot of work to find housing with a voucher. The search requires sifting through numerous advertisements, making numerous calls, and facing frequent rejection,"3 which is precisely what Newkirk has experienced.

301.     Defendants' discriminatory policies contribute to racial and socioeconomic segregation in New York City and on Long Island.

302.     Approximately 35% of Section 8 voucher holders are Black and 47% are Hispanic, including Newkirk, and only 16% are white.

303.     Voucher holders like Newkirk who are unable to obtain housing in Defendants' neighborhoods due to Defendants' discriminatory policies instead obtain housing in poorer, disproportionately minority neighborhoods.

---

3 U.S. Department of Housing and Urban Development, Office of Policy Development and Research, *A Pilot Study of Landlord Acceptance of Housing Choice Vouchers* (2018)

304.     Newkirk has been forced to remain in an unsanitary and unsafe apartment in a low-income neighborhood, despite having a voucher and therefore the means to pay for integrated housing.

305.     The effect of Defendants' policy is to worsen racial and socioeconomic segregation by imposing disproportionate burdens on non-white, low-income New Yorkers seeking to move to integrated neighborhoods, and cut off opportunities for needy individuals by relegating individuals to segregated areas.

306.     The result of voucher rejection is racial segregation and the high concentration of voucher-holders in high-poverty neighborhoods. The goals of the Housing Choice Voucher program to increase mobility and opportunity, deconcentrate poverty, and diminish racial segregation are undermined by clusters of voucher-holders in high-poverty neighborhoods.

307.     Defendants' policies harm Newkirk and the thousands of other similarly situated voucher holders.

**FIRST CAUSE OF ACTION**
**(Violation of Fair Housing Act: 42 U.S.C. § 3604(f)(1) Against All of the Defendants)**

308.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

309.     The Subject Properties are units that are occupied by, or designed or intended to be occupancy as, residences by one or more families. As a result, the Subject Properties are "dwelling[s]" within the meaning of the FHA. 42 U.S.C. § 3602(b).

310.     Pursuant to the FHA it is unlawful to refuse to rent or sell housing or refuse to negotiate for the rental of housing, or otherwise make housing unavailable because of race and/or national origin. 42 U.S.C. § 3604(a).

311. Liability may be established under the FHA "based on a practice's discriminatory effect . . . even if the practice was not motivated by a discriminatory intent." 24 C.F.R. § 100.500.

312. Defendants' act, policies, and practices constitute a refusal to rent housing or negotiate for the rental of housing because of race and/or national origin by refusing to: (a) provide information about apartments available for rent; (b) show apartments available for rent; and (c) consider applications from individuals using housing vouchers.

313. Defendants' policy or practice or refusing to accept housing vouchers towards rent has a discriminatory effect on African Americans and Hispanic Americans, such as Newkirk, because it actually or predictably results in a disparate impact on them. *See* 42. U.S.C. § 3604(a); 24 C.F.R. § 100.500(a).

314. Upon information and belief, Defendants have no justification for their policy or practice of refusing access to housing vouchers holders or for their statements expressing such policy or practice.

315. Defendants' policy or practice is not necessary to achieve any legitimate, nondiscriminatory objective. Even if Defendants could claim a nondiscriminatory objective, that objective could be served by another policy or practice with less discriminatory effect.

316. Defendants' intentional and willful policy and practice of refusing to accept housing vouchers has been implemented in wanton disregard for the rights of others and has had a disparate impact on African Americans and Hispanic Americans such as Newkirk.

317. Newkirk has been injured by Defendants' discriminatory housing practice and is therefore an "aggrieved person," as defined by the FHA, 42 U.S.C. § 3602(i)(1).

## SECOND CAUSE OF ACTION
### (Violation of New York State Human Rights Law Against All of the Defendants)

318. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

319. NYSHRL § 292(36) defines "lawful source of income" to include: "any form of federal, state, or local public assistance or housing assistance including, but not limited to, section 8 vouchers or any other form of housing assistance payment or credit whether or not such income or credit is paid or attributed directly to a landlord, and any other forms of lawful income."

320. New York State Human Rights Law § 296(5)(a)(1) provides that it shall be: "an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation … or any agent or employee thereof … to refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of . . . lawful source of income."

321. New York State Human Rights Law § 296(5)(a)(3) provides that it shall be: "an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation … or any agent or employee thereof …to print or circulate or cause to be printed or circulated any statement, advertisement or publication, or to use any form of application for the purchase, rental or lease of such housing accommodation or to make any record or inquiry in connection with the prospective purchase, rental or lease of such a housing accommodation which expresses, directly or indirectly, any limitation, specification or discrimination as to…lawful source of income."

322. New York State Human Rights Law § 296(5)(c) provides that it shall be: "an unlawful discriminatory practice for any real estate broker, real estate salesperson or employee or

agent thereof … to refuse to sell, rent or lease any housing accommodation … to any person or group of persons because of … lawful source of income."

323.    Defendants violated the New York State Human Rights Law by denying Plaintiff the possibility of a housing opportunity based on Plaintiff's lawful source of income.

324.    Defendants violated the New York State Human Rights Law by advertising properties in a manner that discriminated by lawful source of income by requiring applicants with annual income of a high multiple of the monthly rent or a high credit score.

325.    Defendants violated the New York State Human Rights Law by implementing policies that deny or withhold apartments for rent based on lawful sources of income.

326.    Defendants' conduct was willful and purposeful.

327.    Defendants' intentional and willful policy and practice of refusing to accept housing vouchers has been implemented in wanton disregard of the rights of others, including the Plaintiff.

328.    As a direct and proximate result of Defendants' knowing and purposeful violations of the NYSHRL, Plaintiff has incurred economic and emotional damages.

329.    Accordingly, under New York State Human Rights Law § 297(9), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**(Violation Of New York City Human Rights Law Source of Income Discrimination Against All of the Defendants)**

330.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

331.    The New York City Human Rights Law provides that it shall be "an unlawful discriminatory practice for any real estate broker, real estate salesperson or employee or agent

thereof, to refuse to sell, rent, lease any housing accommodation … to any person or group of persons … because of any lawful source of income of such persons." New York City Administrative Code § 8-107(5)(c).

332.    The New York City Human Rights Law further provides that it shall be "an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation … or any agent or employee thereof … to refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any such person or group of persons such a housing accommodation" because of "any lawful source of income of such person or persons." New York City Administrative Code §8-107(5)(a).

333.    It is also unlawful under the New York City Human Rights Law "[t]o declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for the purchase, rental or lease of... a housing accommodation... which expresses, directly or indirectly, any limitation, specification or discrimination as to…any lawful source of income…or any intent to make such limitation, specification or discrimination."

334.    Section 8-102 of the New York City Administrative Code provides that "lawful source of income" includes income derived from "any form of federal, state or local public assistance or housing assistance including section 8 vouchers."

335.    Defendants violated the New York City Human Rights Law by denying or withholding housing opportunities from the Plaintiff due to her lawful source of income, the voucher.

336. Defendants violated the New York City Human Rights Law by adopting policies that deny or withhold apartments for rent because of source of income.

337. Defendants violated the New York City Human Rights Law by engaging in a pattern or practice of discriminating against voucher-holders like Newkirk by refusing to rent or lease apartments to them, or by refusing to negotiate for the rental or lease of apartments with them, or by otherwise denying or withholding apartments from them, because of their lawful source of income, in violation of Admin. Code § 8-107(5)(c)(1).

338. Defendants violated the New York City Human Rights Law by engaging in a pattern or practice of discriminating against voucher-holders like Newkirk by declaring, printing and/or circulating, or causing to be declared, printed and/or circulated statements, advertisements or publications which expressed, directly or indirectly, a limitation, specification or discrimination as to lawful source of income, in violation of Admin. Code § 8-107(5)(c)(2).

339. Defendants violated Sections 8-107(5)(a) and 8-107(5)(c) by adopting policies that deny or withhold apartments for rent because of source of income and implementing those policies by denying and withholding apartments for rent to Newkirk because of her use of a voucher.

340. Defendants' conduct was willful and intentional.

341. Pursuant to NYC Administrative Code §8-502(a) and (g), Plaintiff is entitled to compensatory damages, punitive damages, attorneys' fees and costs in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Negligent Supervision Against Kenneth Haber)

342. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

343.    Defendant Kenneth Haber was a real estate broker engaged in the brokering of rental apartments in New York City and responsible for the conduct and supervision of the Manhattan Salespersons.

344.    Kenneth Haber had a statutory duty pursuant to N.Y. Real Prop. Law § 441 and to ensure that "each licensed real estate salesman under such broker's supervision is in compliance with his or her obligations under applicable federal, state, and local laws, rules, and regulations pertaining to fair housing and discrimination in the sale or rental of real property or an interest in real property."

345.    19 New York State Rules and Regulations §175.21 requires that such supervision must "consist of regular, frequent and consistent personal guidance, instruction, oversight and superintendence by the real estate broker with respect to the general real estate brokerage business conducted by the broker, and all matters relating thereto."

346.    The Manhattan Salesperson violated their obligations under the FHL, NYSHRL and NYCHRL by inter alia discriminating against Newkirk based on her lawful source of income.

347.    Kenneth Haber knew of or should have known of the discriminatory actions of the Manhattan Salesperson as Newkirk contacted 50 of Douglas Elliman's top agents and every single one of them either withheld housing opportunities from Newkirk due to her voucher use or completely ignored her, demonstrating an undeniable pattern and practice of discriminating based on lawful source of income.

348.    The Manhattan Salespersons' discriminatory actions were taken in the course of their employment with Douglas Elliman.

349.    Plaintiff was damaged by the Manhattan Salespersons' discriminatory actions.

350.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to compensatory damages, punitive damages, attorneys' fees and costs in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Negligent Supervision Against Ann Conroy)

351.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

352.     Defendant Ann Conroy was a real estate broker engaged in the brokering of rental apartments on Long Island and was responsible for the conduct and supervision of the Long Island Salespersons.

353.     Ann Conroy had a statutory duty pursuant to N.Y. Real Prop. Law § 441 and to ensure that "each licensed real estate salesman under such broker's supervision is in compliance with his or her obligations under applicable federal, state, and local laws, rules, and regulations pertaining to fair housing and discrimination in the sale or rental of real property or an interest in real property."

354.     19 New York State Rules and Regulations §175.21 requires that such supervision must "consist of regular, frequent and consistent personal guidance, instruction, oversight and superintendence by the real estate broker with respect to the general real estate brokerage business conducted by the broker, and all matters relating thereto."

355.     The Long Island Salespersons violated their obligations under the FHL, NYSHRL and NYCHRL by inter alia discriminating against Newkirk based on her lawful source of income.

356.     Ann Conroy knew of or should have known of the discriminatory actions of the Long Island Salespersons as Newkirk contacted the top agents and both of them stopped

responding to Newkirk when she asked about using her voucher, demonstrating an undeniable pattern and practice of discriminating based on lawful source of income.

357. The Long Island Salespersons' discriminatory actions were taken in the course of their employment with Douglas Elliman.

358. Plaintiff was damaged by the Long Island Salespersons' discriminatory actions.

359. As a result of the foregoing, Plaintiff is entitled to damages in an amount to compensatory damages, punitive damages, attorneys' fees and costs in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Shaniqua Newkirk respectfully requests that the Court:

a) Enter judgment declaring that Defendants' acts, policies, practices, and statements of willfully refusing to rent apartment units to Housing Choice Voucher holders have an unlawful discriminatory effect based on race and/or national origin in violation of the FHA, 42 U.S.C. §§ 3601-3631, 3604(a), 24 C.F.R. § 100-500;

b) Enter judgment declaring that Defendants' acts, policies, practices, and statements of willfully refusing to rent apartment units to Housing Choice Voucher holders constitutes source of income discrimination in violation of the New York State Human Rights Law ("NYSHRL"), New York Consolidated Laws Service, Executive Law § 296 and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-102, 107 *et. seq.*

c) Enter judgment for appropriate permanent injunctive relief, including an order that Defendants abandon their policies or practices of refusing to rent to Housing Choice Voucher holders and instead accept tenants without regard to sources of income, and such

remedial actions as are necessary to ameliorate Defendants' past illegal discriminatory conduct;

d) Award Plaintiff Shaniqua Newkirk monetary damages in an amount to be determined at trial;

e) Award Plaintiff Shaniqua Newkirk reasonable attorneys' fees and costs;

f) Award Plaintiff Shaniqua Newkirk punitive damages in an amount to be determined at trial; and

g) Grant such other relief as the Court may deem just and proper.

Dated: August 9, 2023

Respectfully submitted,

*/s/ Steven S. Siegel*

**STEVEN S. SIEGEL, ESQ.**
THE LAW OFFICE OF STEVEN S. SIEGEL, PLLC
Attorneys for Plaintiff
626 RXR Plaza
Suite 684, West Tower
Uniondale, New York 11556
(516) 665-2800
StevenScottSiegel@gmail.com