USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/12/24_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SHANIQUA NEWKIRK,

               Plaintiff,

   - against -

DOUGLAS ELLIMAN, INC., DOUGLAS
ELLIMAN REALTY, LLC, DOUGLAS ELLIMAN
OF L.I. LLC, DOUGLAS ELLIMAN, LLC,
KENNETH I. HABER, ANN CONROY, HAL D.
GAVZIE, WENDY E. SANDERS, LAUREN
LITT, KARI E. KAPLAN, JASON M. WALKER,
JENNIFER L. KALISH, MADELINE S. HULT
ELGHANAYAN, ANDREW A. AZOULAY,
JAQUELINE TEPLITZKY, DIANE E.
JOHNSON, EMILY P. SERTIC, HOLLY P.
PARKER, JANNA RASKOPF, ANDREW W.
ANDERSON, ANN CUTBILL, ELEONORA
SRUGO, JANE POWERS, NEAL J. SROKA,
JOSHUA LIEBERMAN, RACHEL MEDALIE,
ELENA S. SARKISSIAN, FRANCES W.
KATZEN, LAUREN A. MUSS, BRUCE L.
EHRMANN, EILEEN HSU, OREN ALEXANDER,
TAL ALEXANDER, SARAH BURKE, TAMIR
SHEMESH, NOBLE BLACK, SUZAN KREMER,
CYBELE KADAGIAN, and ELANA SCHOPPMANN
(BRYNES),

               Defendants.

---

**23 Civ. 7040 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Shaniqua Newkirk ("Newkirk" or "Plaintiff") brings claims under the Fair Housing Act ("FHA") 42 U.S.C. § 3604(a), (c), the New York State Human Rights Law ("NYSHRL") N.Y. Exec. Law § 296(5)(a) (McKinney 2022), the New York City Human Rights Law ("NYCHRL") NYC Admin. Code § 8-107(5)(a),

(c), and the New York Real Property Law ("NYRPL") N.Y. Real Prop. Law § 441(d) against Douglas Elliman, Inc., Douglas Elliman Realty, LLC, Douglas Elliman of L.I., LLC, Douglas Elliman, LLC (collectively, "Douglas Elliman"), and thirty-five individuals who are brokers and licensed real estate salespersons employed by Douglas Elliman (collectively, the "Individual Defendants"). (See First Amended Complaint ("FAC"), Dkt. No. 27, ¶¶ 20, 23-66, 328-84.) Newkirk, an African American holder of a subsidized housing voucher through the Housing Choice Voucher Program, alleges that Defendants discriminated against her based on her source of income — a housing voucher — and that such discrimination amounts to racial discrimination because it disparately impacts racial minorities. (See id. ¶¶ 1, 22, 72, 304-17.)

Douglas Elliman and the Individual Defendants (collectively, "Defendants") moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") on the grounds that, among other things, Newkirk's sole federal claim under the FHA is barred by the statute of limitations. Without the FHA claim, Defendants argue, the Court has no basis to exercise supplemental jurisdiction over Newkirk's state law claims and should dismiss the FAC. (See Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion to Dismiss"), Dkt. No. 34; Memorandum of Law in

Support of Motion to Dismiss ("Defs.' Mem."), Dkt. No. 35, at 9, 15.) For the following reasons, Defendants' Motion to Dismiss is **GRANTED**.

## I.    BACKGROUND

### A.    THE HOUSING CHOICE VOUCHER PROGRAM

The Housing Choice Voucher Program ("HCV Program"), also known as Section 8, is a federal program administered by local housing authorities that provides rental assistance to low-income families so that they may secure housing in the private rental market. (See FAC ¶ 2.) Families in the HCV Program receive housing vouchers, which represent the amount that the government will pay directly to a landlord and guarantee that the voucher holder will be able to pay rent. (See id. ¶ 5.) Once an HCV Program applicant is approved and receives a housing voucher, the voucher holder typically has 120 days to find an apartment unless she obtains an extension. (See id.) Approximately 35% of voucher holders are Black, 47% are Hispanic, and 16% are white. (See id. ¶ 320.)

Housing vouchers are considered a "lawful source of income" under New York State and New York City law. N.Y. Exec. Law § 292(36) (McKinney 2022); NYC Admin. Code § 8-102. It is an unlawful discriminatory practice under the

NYSHRL and NYCHRL to refuse to rent an apartment because of an applicant's lawful source of income. See N.Y. Exec. Law § 296(5)(a)(1) (McKinney 2022); NYC Admin. Code § 8-107(5)(a)(1). Accordingly, it is an unlawful discriminatory practice under the NYSHRL and the NYCHRL to print or circulate advertisements or applications for housing rentals that express a limitation, specification, or discrimination as to lawful source of income. See N.Y. Exec. Law § 296(5)(a)(3) (McKinney 2022); NYC Admin. Code § 8-107(5)(a)(2).

    B.   ALLEGED DISCRIMINATORY ACTS AND CAUSES OF ACTION

Newkirk asserts that (1) certain Individual Defendants discriminated against her by refusing to show her apartments upon learning that she intended to rent with a housing voucher, (2) Douglas Elliman has a policy of refusing to rent to voucher holders, (3) the Douglas Elliman brokers of record failed to train and supervise their associate brokers and salespersons, and (4) Douglas Elliman published discriminatory advertisements. Based on the above, Newkirk brings claims for racial discrimination under the FHA, lawful source of income discrimination under the NYSHRL and NYCHRL, and negligent supervision under the NYSRPL.

First, Newkirk alleges that certain Individual Defendants refused to help her upon learning that she would rent with a housing voucher pursuant to a Douglas Elliman policy of refusing to rent to voucher holders. (See FAC ¶¶ 6, 72, 83.) In February and June 2021, Newkirk cold emailed thirty-three Douglas Elliman associate brokers and licensed real estate salespersons (the "Salesperson Defendants") introducing herself as a voucher holder and seeking their help in finding an apartment. (See id. ¶¶ 108-284.) The Salesperson Defendants responded in a variety of ways in February and June 2021. (See FAC Exs. A, C-FF.) They informed Newkirk of buildings' income requirements, despite Newkirk's assertion that she would pay with a housing voucher (see FAC ¶¶ 121-22); told Newkirk that they had no apartments that accepted housing vouchers (see id. ¶¶ 126-27, 130-31, 134-35, 138-39, 144-45, 155-56, 159-60, 181-82, 218-19); stated that they did not know what a housing voucher was (see id. ¶¶ 149-50); informed Newkirk that they had no apartments or were not able to find apartments that met her criteria (see id. ¶¶ 166-67, 175-76, 188-89, 195-97); never responded or eventually stopped responding (see id. ¶¶ 208-09, 214-17, 224-26, 230-31, 234-35, 239-40, 244-45, 249-50, 254-55, 259-60, 264-65, 269-70, 273-74, 278-79, 283-84); or, in the

case of two Salesperson Defendants who followed up with Newkirk via text, ceased responding when Newkirk informed them that she would rent with a housing voucher (see id. ¶¶ 114-15).

Second, Newkirk alleges that Defendant Kenneth Haber, the Douglas Elliman broker of record for its Manhattan operations, and Defendant Ann Conroy, the Douglas Elliman broker of record for its Long Island operations (collectively, the "Broker of Record Defendants"), failed to adequately supervise and train the Manhattan and Long Island Salesperson Defendants regarding local, state, and federal laws on fair housing and discrimination. (See id. ¶¶ 93, 97-98, 101, 104-05.)

Third, Newkirk alleges that Douglas Elliman published discriminatory advertisements. She states that she "came across numerous discriminatory Douglas Elliman advertisements with high income, credit score, and guarantor requirements, which disqualify renters with a voucher." (Id. ¶ 292.) Except for one allegedly discriminatory advertisement (see id. ¶ 289), Newkirk does not allege that she contacted the listing agents to inquire about the advertised apartments, or that she applied for and was rejected from the advertised apartments.

Based on the above alleged discriminatory acts, Newkirk brings claims under the FHA, NYSHRL, NYCHRL, and NYRPL. She asserts that the Salesperson Defendants' refusal to rent to her because she is a housing voucher holder, Defendants' policy of refusing to rent to voucher holders, and Defendants' publication of advertisements that express income, credit score, and/or guarantor requirements are prohibited lawful source of income discrimination under the NYSHRL and NYCHRL. See N.Y. Exec. Law § 296(5)(a)(1), (a)(3), (c) (McKinney 2022); NYC Admin. Code § 8-107(5)(a), (c). (See FAC ¶¶ 341-64.) Furthermore, Newkirk argues that discrimination against housing voucher holders amounts to racial discrimination because it "actually or predictably results in a disparate impact" on African Americans and Hispanic Americans, as "82% of voucher-holders are Black or Hispanic." (Id. ¶¶ 316, 334.) Hence, as the FHA does not prohibit discrimination based on income source, Newkirk claims that Defendants violated the FHA by "refus[ing] to rent . . . [or] negotiate for the rental of housing . . . because of race and/or national origin." (FAC ¶ 330; see id. ¶¶ 332-34.) See 42 U.S.C. § 3604(a); 24 C.F.R. § 100.500 (liability may be established under the FHA "based on a practice's discriminatory effect"). Newkirk also asserts that Defendants violated the FHA by publishing

"advertisement[s] [that] impermissibly indicate a
preference of race and/or national origin by requiring
applicants with annual income of a high multiple of the
monthly rent or a high credit score or requiring a
guarantor with annual income of a high multiple of the
monthly rent." (Id. ¶ 335.) See 42 U.S.C. § 3604(c).
Finally, Newkirk brings claims for negligent supervision
under the NYRPL against the Broker of Record Defendants for
failing their statutory duty to "adequately train [the
Salesperson Defendants] regarding the local, state and
federal laws on fair housing and discrimination." (Id.
¶¶ 369, 379; see id. ¶¶ 366-84.)

    C.   PROCEDURAL HISTORY

Newkirk initiated this action on August 9, 2023. (See
Complaint ("Compl."), Dkt. No. 1.) In her Complaint,
Newkirk alleged that the Salesperson Defendants refused to
help her secure an apartment in February and June 2021
because she intended to pay with a housing voucher. (See
id. ¶¶ 105-281.) Newkirk also alleged that the Douglas
Elliman "advertisement on streeteasy.com for the apartment
that Newkirk inquired about" was discriminatory because it
stated income and employment requirements. (Id. ¶ 286; see
id. ¶ 287.)

Pursuant to this Court's Individual Rule of Practice II.B, Defendants communicated with Newkirk via letter concerning their intended Motion to Dismiss and identifying purported deficiencies in the Complaint. (See Dkt. No. 24.) By letter dated November 3, 2023, Defendants informed Newkirk that her FHA claim was time-barred because the FHA has a two-year statute of limitations, the alleged discriminatory acts occurred in or before June 2021, and Newkirk did not file suit until August 2023, more than two years after the last alleged discriminatory act took place. (See Dkt. No. 24, Ex. A, at 2.) See 42 U.S.C. § 3613(a)(1)(A). By letter dated December 4, 2023, Newkirk countered that her FHA claim was timely because the alleged discriminatory practice was ongoing and had not terminated. (See Dkt. No. 24, Ex. B, at 2.) Regardless, Newkirk advised that her intended Amended Complaint would "further demonstrate" that Defendants' "continued policy and practice of refusing to rent apartments to voucher holders resulted in further discriminatory acts that extended well into the limitations period and are ongoing." (Id.)

Newkirk filed the FAC on February 6, 2024. (See Dkt. No. 27.) In the FAC, Newkirk maintained that although she "was extremely frustrated and disturbed by Douglas Elliman's agents refusing to assist her," she "did not

appreciate that this conduct was actionable discrimination under the FHA until consulting with counsel in September 2021." (FAC ¶ 85.) Also, Newkirk added allegations regarding Defendants' purportedly discriminatory advertising. Whereas in the Complaint Newkirk listed "the advertisement . . . for the apartment that [she] inquired about" as the only concrete example of a discriminatory advertisement (Compl. ¶ 286), in the FAC Newkirk included examples of "numerous discriminatory Douglas Elliman advertisements" that she "came across" while "continu[ing] to look for a suitable apartment" (FAC ¶¶ 291-92). These advertisements were published in August 2022, October 2022, June 2023, September 2023, November 2023, and at the time the FAC was filed in February 2024. (See id. ¶¶ 293-302.)

Defendants moved to dismiss on April 5, 2024, pursuant to Rule 12(b)(6) on the grounds that Newkirk's FHA claim — her sole federal claim — was time-barred and that, regardless, Newkirk failed to plead sufficient facts to state any claim. (See Motion to Dismiss; Defs.' Mem.) Newkirk filed her Opposition on May 13, 2024. (See Dkt. No. 37.) Defendants replied on June 7, 2024. (See Dkt. No. 38.)

## II.  DISCUSSION

### A.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint states "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct" — there is not "a probability requirement at the pleading stage." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (quoting Twombly, 550 U.S. at 556); see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "In other words, a complaint should not be dismissed when the factual allegations sufficiently 'raise a right to relief above the speculative level.'" Liboy v. Russ, No. 22 CV 10334, 2023 WL 6386889, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting Twombly, 550 U.S. at 555). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's

favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted).

"Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." Hirsch v. Rehs Galleries, Inc., No. 18 CV 11864, 2020 WL 917213, at *3 (S.D.N.Y. Feb. 26, 2020) (quoting Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) (internal quotations omitted)). "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." Ghartey, 869 F.2d at 162. "[F]or a Court to grant a motion to dismiss on the basis that the asserted claims are time-barred, there must be no factual question as to whether the alleged violations occurred within the statutory period." Town of Ramopo, New York v. Town of Clarkstown, No. 16 CV 2004, 2017 WL 782500, at *3 (S.D.N.Y. Feb. 27, 2017).

B.    NEWKIRK'S FHA CLAIM IS TIME-BARRED

1.    The FHA Has a Two-Year Statute of Limitations Period

The FHA requires an "aggrieved person" to "commence a civil action in an appropriate United States district

court . . . not later than 2 years after the occurrence or the termination of an allegedly discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A); see also Liboy, 2023 WL 6386889, at *6 ("[C]laims under the FHA are subject to a two-year statute of limitations.").

Newkirk commenced this action on August 9, 2023 (see Compl.), so only allegedly discriminatory housing practices occurring or terminating after August 9, 2021, are within the FHA's two-year statute of limitations period. Newkirk alleges that Defendants refused to rent her an apartment in February and June 2021 upon learning that she would rent with a housing voucher, which Newkirk argues was unlawful racial discrimination under the FHA. (See FAC ¶¶ 108, 121, 124, 130, 134, 138, 142, 147, 153, 159, 163, 170, 181, 185, 192, 200, 211, 218, 221, 228, 232, 237, 242, 247, 252, 257, 262, 267, 271, 276, 281, 333-34.) These alleged refusals are undoubtedly beyond the FHA's statute of limitations period. Thus, the issues before the Court are whether (1) Newkirk's assertion that she did not appreciate that Defendants' alleged refusal to help her was actionable until "consulting with counsel in September 2021" and (2) Newkirk's allegation that she "came across" Douglas Elliman's purportedly racially discriminatory advertisements in 2022, 2023, and 2024 bring Newkirk's FHA

claim within the statute of limitations period. (Id. ¶¶ 85, 292; see id. ¶¶ 293-302.)

### 2.   The Discovery Rule Does Not Apply

When Newkirk amended her Complaint to include that she "did not appreciate" that the Salesperson Defendants' "refusing to assist her" was "actionable discrimination under the FHA until consulting with counsel in September 2021" (id. ¶ 85), she attempted to take advantage of the "discovery rule." However, the discovery rule cannot save Newkirk's FHA claim because ignorance of legal rights does not toll the statute of limitations. See In re Bibox Grp. Holdings Ltd. Sec. Litig., 534 F. Supp. 3d 326, 339 (S.D.N.Y. 2021).

"Under the federal injury discovery rule, accrual begins 'when the plaintiff knows or has reason to know of the *injury* which is the basis of his action.'" Roeder v. J.P. Morgan Chase & Co., 523 F. Supp. 3d 601, 613 (S.D.N.Y. 2021) (quoting Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (emphasis added)); see also Washington v. Cnty. of Rockland, 373 F.3d 310, 319 (2d Cir. 2004) ("As with all discrimination claims, plaintiffs' claims accrued when they knew or should have known of the discriminatory action.").

A plaintiff learns of his injury when he "learns of 'the critical *facts* that he has been hurt and who has inflicted the injury.'" In re Bibox, 534 F. Supp. 3d at 339 (quoting Rotella v. Wood, 528 U.S. 549, 556 (2000) (emphasis in original)). Indeed, "[a] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim." Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998) (internal quotation omitted); see, e.g., Town of Ramopo 2017 WL 782500, at *4-5 (FHA claims predicated on "the existence of a barrier across Samuel Road" were time barred because "Plaintiff became aware of the injury . . . when the initial barrier blocking the passage of public traffic was installed"); Clement v. United Homes, LLC, 914 F. Supp. 2d 362, 372 (E.D.N.Y. 2012) (FHA plaintiff discovered injury of purchasing overvalued house when "many warranty problems came to her attention," not when she "became increasingly suspicious that she had paid more for the house than it was actually worth"); compare Adkins v. Morgan Stanley, No. 12 CV 7667, 2013 WL 3835198, at *6 (S.D.N.Y. July 25, 2013) (FHA claim was timely because Plaintiffs "could not have known" that Defendant's allegedly predatory mortgages "caused a disparate impact on [Plaintiffs] and other African-American borrowers").

Conversely, "[i]gnorance of legal rights does not delay the accrual of a claim under a discovery rule." In re Bibox, 534 F. Supp. 3d at 339; see, e.g., Liboy, 2023 WL 6386889, at *5 (Plaintiff discovered his injury "the moment he learned he was removed from the [public housing] waitlist," not when "he became aware . . . he could challenge his removal").

Here, Newkirk was aware of the "critical facts" of her injury and who had inflicted it by June 2021: that she had contacted the Salesperson Defendants, introducing herself as a housing voucher holder and seeking assistance in finding an apartment, and that none of the Salesperson Defendants helped her. In re Bibox, 534 F. Supp. 3d at 339. (See FAC ¶¶ 108-250.) It is irrelevant that Newkirk did not appreciate that the Salesperson Defendants' alleged refusal to help her find an apartment "implicate[d] a cognizable legal claim" under the FHA. Kronisch, 150 F.3d at 121 (internal quotation omitted). Insofar as Newkirk's FHA claim is based on the Salesperson Defendants' alleged refusal to assist her, Newkirk's claim began accruing in June 2021 and is thus barred by the statute of limitations. For Newkirk's FHA claim to survive, her remaining allegations must fall within the statute of limitations, or

a different exception to the statute of limitations must
apply.

### 3. Viewing Discriminatory Advertisements Is Not Actionable

Besides alleging that the Salesperson Defendants
refused to help her prior to the FHA's limitations period,
Newkirk asserts that between August 2022 and February 2024
she "came across numerous discriminatory Douglas Elliman
advertisements . . . which disqualify renters with a
voucher." (FAC ¶ 292; see also id. ¶¶ 293-302.) Although
Newkirk characterizes the advertisements as evidence of
Defendants' alleged "pattern, practice, and policy of
refusing to assist voucher holders" (FAC ¶ 303) rather than
as independently actionable injuries, as a preliminary
matter the Court addresses why the advertisements, standing
alone, cannot support an FHA claim, even though they were
published within the statute of limitations period. Simply
put, Newkirk does not have standing to bring an FHA claim
based purely on reading purportedly discriminatory
advertisements because she does not allege that viewing the
advertisements injured her. See McDermott v. New York Metro
LLC, 664 F. Supp. 2d 294, 305 (S.D.N.Y. 2009).

A plaintiff must plead injury to establish
constitutional and "prudential" or "statutory" standing

under the FHA. See Friends of the Earth, Inc. v. Laidlaw
Envtl. Servs., 528 U.S. 167, 180–81 (2000) (to establish
constitutional standing, "a plaintiff must show . . . it
has suffered an 'injury in fact'"); Bank of Am. Corp.
v. City of Miami, Fla., 581 U.S. 189, 196-97 (2017) (FHA
Plaintiff City of Miami satisfied prudential standing
because its claimed "financial injury . . . [of] lost tax
revenue and extra municipal expenses" from allegedly
discriminatory mortgages was arguably within the FHA's zone
of interest). Indeed, the "FHA confers standing to
challenge discriminatory housing practices on any
'aggrieved person,'" which the statute defines to include
"any person who – (1) claims to have been *injured* by a
discriminatory housing practice; or (2) believes that such
person will be *injured* by a discriminatory housing practice
that is about to occur." Winfield v. City of New York, No.
15 CV 5236, 2016 WL 6208564, at *3 (S.D.N.Y. Oct. 24, 2016)
(citing 42 U.S.C. §§ 3602(i), 3613(a)(1)(A)) (emphasis
added).

       Under the FHA it is unlawful to "make, print, or
publish, or cause to be made, printed, or published any
notice, statement, or advertisement, with respect to
the . . . rental of a dwelling that indicates any
preference, limitation, or discrimination based on

18

race . . . or national origin." 42 U.S.C. § 3604(c). (See
FAC ¶¶ 331, 335.) When a plaintiff brings a § 3604(c) claim
based purely on reading discriminatory advertisements, the
plaintiff must "allege some form of personal injury,
including psychic injury or substantial insult or
distress." McDermott, 664 F. Supp. 2d at 305 (FHA plaintiff
bringing § 3604(c) claim who "does not claim that he
suffered any personal injury" did not have standing)[1]; see
also United States v. Space Hunters, Inc., 429 F.3d 416,
424 (2d Cir. 2005) ("[Section 3604(c)] also protect[s]
against [the] psychic injury caused by discriminatory

---

[1] The McDermott Court contextualized its holding with the Second
Circuit's holding in Ragin v. Harry Macklowe Real Estate Company
("Ragin II"). 6 F.3d 898 (2d Cir. 1993). In Ragin II, the Second
Circuit first addressed "ordinary reader" standing — meaning standing
based purely on reading and not on an adverse action — to challenge
discriminatory advertisements under the FHA. There, African American
newspaper readers claimed that a real estate company and its sole owner
and president "violated the [FHA's] prohibition against racial
discrimination in residential housing advertising because all the
models portrayed in [Defendants'] advertisements were white." Id. at
901. The Second Circuit held that the reader Plaintiffs had standing
because their statutory right to read non-racially discriminatory
housing advertisements was violated. Id. at 904. The McDermott Court,
however, emphasized that while the Ragin II Court did not address
whether the reader Plaintiffs pleaded injury, the District Court found
that "the [i]ndividual [p]laintiffs have proved that they were injured
by the [d]efendants' ads in that they received ads violative of their
right to nondiscriminatory real estate advertising which caused them
substantial offense and emotional distress." 664 F. Supp. 2d at 304
(citing Ragin v. Harry Macklowe Real Est. Co., 801 F. Supp. 1213, 1232
(S.D.N.Y. 1992)) (emphasis added). Hence, "[b]ecause [the District
Court's] injury finding relied in part on plaintiffs' proof of offense
and emotional distress, the Second Circuit's affirmance of that finding
does not amount to a holding that readership alone would suffice to
establish injury." Id.

statements . . . ." (internal quotations and citation omitted)).

Here, Newkirk does not claim that she suffered any injury from reading the allegedly discriminatory advertisements, only arguing that the advertisements demonstrate that Defendants' policy of discrimination against voucher holders was ongoing. (See FAC ¶ 303.) Therefore, the purportedly discriminatory advertisements, standing alone, cannot sustain an FHA claim, although they were published within the statute of limitations period.

### 4.   The Continuing Violation Doctrine Does Not Apply

Newkirk characterizes the allegedly discriminatory advertisements published between 2022 and 2024 as "demonstrat[ing] [Defendants'] continued policy or practice of refusing to accept housing vouchers" (id. ¶ 301), rather than as independently actionable conduct. As explained below, however, the continuing violation theory cannot save Newkirk's FHA claim from being time-barred because the Salesperson Defendants' refusal to assist her and the publication of advertisements are separate and discrete acts, not a continuous policy that persisted into the FHA's statute of limitations period. See Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491, 503 (S.D.N.Y. 2015).

20

The "continuing violation" theory allows a plaintiff "to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period" when the claims "are based not just on an isolated event, but on an alleged ongoing policy of discrimination." Town of Ramopo, 2017 WL 782500, at *5 (quoting Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 118 (2d Cir. 1997) (internal quotations omitted)). "[T]he existence of such a continuing discriminatory practice or policy may delay the commencement of the statute of limitations period 'until the last discriminatory act in furtherance of it.'" Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir.1992)). However, "courts in the Second Circuit 'have been loath to apply [the continuing violation doctrine] absent a showing of compelling circumstances.'" See Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (quoting Trinidad v. N.Y.C. Dep't of Corr., 423 F.Supp.2d 151, 165 n. 11 (S.D.N.Y.2006)).

Moreover, "in the housing context, courts have applied the continuing-violation theory where the type of violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear

until it was repeated during the limitations period."
Jordan, 91 F. Supp. 3d at 503 (internal quotation marks and
citation omitted). Conversely, "courts have held the
continuing violation theory does not apply where a
plaintiff was on notice of what she believed was
discrimination but failed to act in preservation of her
rights in spite of her knowledge." Melton v. Malcolm
Shabazz, L.P., No. 18 CV 08111, 2021 WL 535661, at *4
(S.D.N.Y. Feb. 12, 2021) (internal quotations and citation
omitted).

Furthermore, the continuing violation theory does not
apply to "separate and discrete events." Jordan, 91 F.
Supp. 3d at 503 (FHA Plaintiff's allegations that
"defendants failed to grant promised refinancing terms,
improperly foreclosed [Plaintiff's] home, dissolved her
overdraft line of credit without notice, and wrongfully
froze exempt funds during a garnishment action . . . would
constitute independently actionable conduct"); see also
Pantoja v. Scott, No. 96 CV 8593, 2001 WL 1313358, at *10
(S.D.N.Y. Oct. 26, 2001) (FHA Plaintiff's allegation that
Defendant "conspired with [co-Defendant] to illegally
convert and plunder Plaintiff's mortgage proceeds" was
"separate and apart" from Plaintiff's allegation that
Defendant "denied him secondary financing to purchase a

condominium due to discriminatory motive"); compare E.
Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assocs.,
133 F. Supp. 2d 203, 212-13 (E.D.N.Y. 2001) (housing
development that was allegedly "unavailable to wheelchair
users" throughout "the intervening three-year period"
between Plaintiffs' discovery of the FHA violation and the
filing of the Complaint was a continuing violation).

The Court finds no compelling circumstances that
warrant application of the continuing violation doctrine
here. First, Newkirk does not argue that the alleged FHA
violations "did not become clear until [they were] repeated
during the limitations period," Jordan, 91 F. Supp. 3d at
503, as the Salesperson Defendants allegedly refused to
help Newkirk and Newkirk viewed at least one allegedly
discriminatory advertisement before the limitations period
(see FAC ¶ 108-284, 289). Although Newkirk states that she
"did not appreciate that this conduct was actionable
discrimination under the FHA until consulting with counsel
in September 2021," (id. ¶ 85.), the alleged discriminatory
acts themselves were apparent prior to the limitations
period. See, e.g., Liboy, 2023 WL 6386889, at *7 (declining
to apply the continuing violation doctrine because
Plaintiff "was on notice of his injury the moment he
learned he was removed from the public housing transfer

23

waitlist"); <u>compare</u> <u>Melton</u>, 2021 WL 535661, at *4

(continuing violation doctrine applied when FHA Plaintiff

alleged that Defendants "discriminated against her by

delaying repairs . . . of her cabinets," but that "she was

not aware of the alleged discrimination until . . . she saw

other cabinets on the sidewalk and suspected that cabinets

of other tenants were being replaced").

Second, the publication of allegedly discriminatory

advertisements and the Salesperson Defendants' alleged

refusal to assist Newkirk were "separate and discrete

events." <u>Jordan</u>, 91 F. Supp. 3d at 503. The Court finds

that these purported discriminatory acts are more akin to

the distinct acts in <u>Jordan</u> and <u>Pantoja</u> than to the housing

development in <u>East Paralyzed Veterans Association</u> that was

continuously "unavailable to wheelchair users" throughout

the three-year period between its construction and the

initiation of the lawsuit. 133 F. Supp. 2d at 212.

Therefore, the continuing violation doctrine does not apply

here.

>    5.    <u>The Court Dismisses the FHA Claim Without</u>
>          <u>Prejudice</u>

Because neither the discovery rule nor the continuing

violation doctrine saves Newkirk's FHA claim, and because

Newkirk does not have standing to bring an FHA claim based

on alleged discriminatory advertisements published within the statute of limitations period, the Court hereby dismisses Newkirk's FHA claim. But the Court does so without prejudice because leave to amend a complaint should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). As the Court finds that by repleading the FHA claim Newkirk may be able to assert facts sufficient to state a claim for discriminatory advertising, it will dismiss this claim without prejudice. Accordingly, Newkirk's FHA claim is dismissed without prejudice.

    C.    THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS

    The Court exercises federal question subject matter jurisdiction over this action. See 28 U.S.C. § 1331. (See FAC ¶ 17.) As Newkirk's dismissed FHA claim was her sole federal claim, the Court declines to exercise supplemental jurisdiction over her remaining state law claims. See 28 U.S.C. § 1367.

    A district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

§ 1367(c)(3). "Generally, 'when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction.'" Dickerson v. BPP PCV Owners LLC, No. 21 CV 9003, 2024 WL 4696088, at *3 (S.D.N.Y. Nov. 6, 2024) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)) (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL housing discrimination claims after dismissing FHA claim); see also Torres v. City of New York, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003) ("Where the basis for pendent jurisdiction is dismissed, ordinarily so should the state law claims be dismissed."). Likewise, the Court declines to exercise supplemental jurisdiction over Newkirk's state-law claims and dismisses them.

***

In sum, the Court finds that Newkirk failed to state an FHA claim because the alleged discriminatory acts were either outside the statute's two-year limitations period or, as pleaded in the FAC, did not injure Newkirk. Although Newkirk attempted to salvage her FHA claim by invoking the discovery rule and continuing violation exceptions to the limitations period in the FAC, neither applies because

26

Newkirk discovered her alleged injury and saw one allegedly discriminatory advertisement prior to the limitations period. Moreover, the Salesperson Defendants' alleged refusal to assist Newkirk and the publication of advertisements are separate and discrete acts, not a single continuous violation. The Court dismisses the FHA claim without prejudice, however, because Newkirk may be able to state a claim for discriminatory advertising. Because Newkirk's FHA claim was her sole federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### III. ORDER

For the foregoing reasons, it is hereby,

**ORDERED** that the motion of Defendants Douglas Elliman, Inc., Douglas Elliman Realty, LLC, Douglas Elliman of L.I., LLC, Douglas Elliman, LLC (collectively, "Douglas Elliman"), and thirty-five individuals who are brokers and licensed real estate salespersons employed by Douglas Elliman to dismiss the First Amended Complaint of Plaintiff Shaniqua Newkirk ("Newkirk") (see Dkt. No. 34) is **GRANTED** and Count One is dismissed without prejudice. The Court declines to exercise supplemental jurisdiction over Counts Two through Five. It is further

**ORDERED** that Newkirk is granted leave to file an Amended Complaint as to Count One within 21 days of the date of entry of this Order.

**SO ORDERED.**

Dated:      12 December 2024
            New York, New York

                                        Victor Marrero
                                          U.S.D.J.